United States District Court
Southern District of Texas
**ENTERED**
September 17, 2021
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| COURTNEY B.,[1] | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Case No. 4:19-CV-04525 |
| v. | § | |
| | § | |
| KILOLO KIJAKAZI,[2] | § | |
| Acting Commissioner of Social | § | |
| Security | § | |
| | § | |
| *Defendant.* | § | |

**<u>MEMORANDUM AND ORDER
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>**

Plaintiff Courtney B. ("Plaintiff") filed this suit seeking judicial review of the

denial of disability insurance benefits under Title II of the Social Security Act ("the

Act"). ECF No. 1.[3] The Parties filed cross-motions for summary judgment. ECF

Nos. 12, 13. Based on the briefing and the record, the Court determines that the

Plaintiff's motion is denied, the Defendant's motion is granted, and the

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] The suit was originally filed against Andrew Saul, the then-Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been automatically substituted as Defendant.

[3] On March 4, 2020, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). ECF No. 10.

Commissioner's final decision in the underlying administrative action is affirmed.

## I.  BACKGROUND

Plaintiff is a 37-year-old woman, with a high school education. R. 7, 191, 214.[4] Plaintiff worked as a medical billing manager, a grocery cashier and manager, and has done medical billing and medical coding. R. 215, 236–44. Plaintiff has not returned to work since February 23, 2016. R. 214.

On February 13, 2017, Plaintiff filed her application for disability insurance benefits under Title II of the Act, claiming both physical and mental impairments and alleging an onset date of February 23, 2016. R. 191–92. Plaintiff based[5] her application on syringomyelia syrinx on spinal cord, chronic pain, continual muscle spasms, sporadic paralysis on right side, bilateral numbness in hands, complications with bowel movements, complications with urination, and depression. R. 213. The Commissioner denied her claim initially, R. 112–16, and on reconsideration. R. 117–21.

A hearing was held before an Administrative Law Judge ("ALJ"). An attorney represented Plaintiff at the hearing. R. 40. Plaintiff, a medical expert ("ME"), and a

[4] "R." citations refer to the electronically filed Administrative Record, ECF No. 8.

[5] The relevant time period is February 23, 2016—Plaintiff's alleged onset date—through December 31, 2019—Plaintiff's last insured date. ECF No. 12 at 2. The Court will consider medical evidence outside this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin,* 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000).

vocational expert ("VE") testified at the hearing. R. 41. The ALJ issued a decision denying Plaintiff's request for benefits.[6] R. 14. The Appeals Council denied Plaintiff's request for review, affirming the ALJ's denial of benefits. R. 1; *see Sims v. Apfel*, 530 U.S. 103, 106 (2000) (explaining that when the Appeals Council denies the request for review, the ALJ's opinion becomes the Commissioner's final decision).

Plaintiff filed this lawsuit, ECF No. 1, challenging the ALJ's analysis and asking the Court to find that Plaintiff is entitled to disability benefits under the Act, or, in the alternative, remand for reconsideration of the evidence. ECF No. 1; Pl.'s

---

[6] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ determined Plaintiff was not disabled at step five. R. 32. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity since her alleged onset date of February 23, 2016. R. 19 (citing 20 C.F.R. 404.1571 *et seq.*). At step two, the ALJ found that Plaintiff has the following severe impairments: chronic pain, anxiety, and major depressive disorder. R. 20. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526). R. 20. The ALJ found that Plaintiff has the Residual Functional Capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b). R. 22. However, the ALJ included limitations, including that Plaintiff could never climb ladders, ropes, or scaffolds; could never be exposed to extreme heat or cold; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; could understand, remember, and carryout simple, routine, and repetitive tasks, involving only simple work-related decisions with few, if any, workplace changes; could have occasional interaction with the public; and the job should not have any assembly lines or mandated teams and should be self-paced so the claimant can speed up or slow down or even stop so long as the assigned work is complete by the end of the shift. R. 22. At step four, the ALJ determined that through the date last insured, Plaintiff was unable to perform any past relevant work. R. 30. At step five, based on the testimony of the vocational expert and a review of the report, the ALJ concluded that considering Plaintiff's age, education, work experience, and RFC, Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, including mail clerk, office cleaner, and shipping and receiving weigher. R. 31. Therefore, the ALJ concluded that Plaintiff was not disabled. R. 32.

MSJ Brief, ECF No. 12. In his cross motion, Defendant contends that the ALJ's findings are proper and supported by substantial evidence. Def.'s MSJ Brief, ECF No. 13.

## II.  STANDARD OF REVIEW

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing. The findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive[.]

*Id.*

Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id.*; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza*, 219 F.3d at 393. "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

The Court weighs four factors to determine "whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Conley-Clinton v. Saul*, 787 F. App'x 214, 216 (5th Cir. 2019) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id.* (quotations omitted). The "substantial evidence" standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823. "Only where there is a 'conspicuous absence of credible choices or no contrary medical evidence' will we find that the substantial evidence standard has not been met." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009).

## III.   BURDEN OF PROOF

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving her disability. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d) (1)(A) (2000). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3) (2000). The impairment must be so severe that the claimant is "incapable of engaging in any substantial gainful activity." *Foster v. Astrue*, No. H-08-2843, 2011 WL 5509475, at *6 (S.D. Tex. Nov. 10, 2011) (citing *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992)). A claimant is eligible for benefits only if the onset of the impairment started by the date the claimant was last insured. *Id.* (citing *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990)).

The Commissioner applies a five-step sequential process to determine disability status. *Id.* The claimant bears the burden of proof at the first four steps to establish that a disability exists. *Farr*, 2012 WL 6020061, at *2. The burden shifts to the Commissioner at step five to show that the claimant can perform other work. *Id.* The burden then shifts back to the claimant to rebut this finding. *Id.* If at any step

in the process the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Id.*

## IV.   DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT.

Plaintiff raises three issues. First, Plaintiff argues that the ALJ violated SSR 00-4p by not resolving the conflict between the vocational expert's testimony and the DOT. ECF No. 12 at 4–7. Second, Plaintiff contends that the ALJ misstated and cherry-picked the evidence and failed to adequately explain the decision. *Id.* at 7–13. Third, Plaintiff argues that the ALJ erred in not providing an explanation as to how much weight was given to treating physician opinions and why their opinions went unreferenced. *Id.* at 13-15. Defendant counters that the vocational expert's testimony is consistent with the DOT and Plaintiff failed to show that she cannot perform the step five jobs. ECF No. 14 at 5–7. The Commissioner also argues that the ALJ properly considered and weighed the evidence of record, including the treating physicians' opinions, and that the ALJ's decision is supported by substantial evidence. *Id.* at 7–11.

### A. ALJ Did Not Violate SSR 00-4p When Considering the Vocational Expert's Testimony.

Plaintiff argues that the ALJ violated SSR 00-4p in two ways. First, Plaintiff contends that the ALJ failed to resolve the conflict between the VE's testimony and the DOT because the ALJ's finding that Plaintiff could perform the position of "office clerk (DOT 323.687-014): 917,000 jobs nationally" conflicts with the actual

7

description of the position in the DOT. ECF No. 12 at 4. Plaintiff asserts the DOT number the ALJ provided corresponds to a job called "cleaner, housekeeping (any industry)" with requirements that differ from the position the ALJ provided. *Id.* Plaintiff argues that she cannot respond to the finding without knowing to which position the ALJ refers. *Id.* Second, Plaintiff further argues that the ALJ violated SSR 00-4p by accepting the VE's testimony despite a conflict in the reasoning level of the jobs the VE provided VE and the ALJ's RFC determination. *Id.* at 6–7.

Defendant concedes that the ALJ committed "a scrivener's error" when she provided the proper DOT code for the position of office cleaner but referred to the position as office clerk. ECF No. 14 at 5. However, Defendant argues that Plaintiff could have easily responded to the position of office cleaner as this was the position the VE identified with the same DOT code the ALJ included in her decision. *Id.* at 5–6. Further, Defendant argues that there is no "conflict" between the DOT and the VE's testimony as the VE provided the correct job title and corresponding DOT number. *Id.* at 6. Defendant also argues that there is no conflict between the jobs the VE provided and the ALJ's RFC determination because an RFC limiting a person to simple tasks does not preclude the performance of jobs with level three reasoning. *Id.* at 7.

### 1. The ALJ did not commit reversible error when she cited the wrong job title for one of the jobs the VE provided.

The error Plaintiff identified involves only the ALJ's recitation of the title of the position, not the DOT code for office cleaner. R. 32. During the hearing, the VE provided both the correct job title and corresponding DOT number for the position of "office cleaner." R. 74.

Where the ALJ's intent is apparent, an error or contradiction in a decision may be excused as a scrivener's error. *Galvan v. Berryhill*, No. 4:15-CV-3718, 2018 WL 993882, at *3 n.3 (S.D. Tex. Feb. 21, 2018) (citing *Dukes v. Colvin*, No. 3:14-CV-173-BF, 2015 WL 1442988, at *4 (N.D. Tex. Mar. 31, 2015)). In cases where the error has no effect on the analysis or the outcome, courts again consider it to be a scrivener's error. *See, e.g.*, *Wills v. Colvin*, No. 1:14-CV-504, 2016 WL 792693, at *6–7 (E.D. Tex. Mar. 1, 2016) (holding that a single mention in ALJ's decision that claimant was able to perform light work, where the ALJ stated later in the opinion that claimant was able to perform medium work, constituted a scrivener's error because other evidence in the opinion indicated ALJ's intent to limit claimant to medium work); *Madison v. Astrue*, No. 3:CV-07-364, 2008 WL 2962337, at *6 (M.D. Pa. July 29, 2008) (finding the ALJ's use of the phrase "unable to perform any past relevant work" in the heading of his analysis in step four amounted to a scrivener's error because the ALJ went on to step five and found that claimant could perform other work in the national economy). In contrast, where the error alters the

outcome of the ALJ's decision, courts have found that it amounts to more than a mere transcription or typographical error. *See, e.g.*, *Smith v. Colvin*, No. 3:15-CV-2964-BH, 2016 WL 5086073, at *10–11 (N.D. Tex. Sept. 19, 2016) (rejecting Commissioner's argument that ALJ's error constituted a scrivener's error because RFC was inconsistent with the step five determination and evidence in record did not clearly reveal the ALJ's intent).

The ALJ posed two hypothetical questions to the VE that included Plaintiff's limitations on her ability to work. Based on the second set of parameters, the VE testified that the hypothetical person would be able to serve in the positions of mail clerk (DOT 209.687-026), office cleaner (DOT 323.687-014), and shipping and receiving weigher (DOT 222.387-074). R. 73–75. The VE further testified that there were 100,000 mail clerk jobs nationally, 917,000 office cleaner jobs nationally, and 69,000 shipping and receiving weigher jobs nationally. *Id.* When crafting her decision, the ALJ relied on the VE's testimony. The ALJ wrote, "The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations, light and unskilled, such as: 1. Mail clerk (DOT 209.687-026): 100,000 jobs nationally; 2. Office clerk (DOT 323.687-014): 917,000 jobs nationally; and 3. Shipping receiving clerk (DOT 222.387-074): 69,000 jobs nationally." R. 31–32. Further, the ALJ wrote, "Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's

age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. 32.

Despite the discrepancy between the VE's testimony and the ALJ's written opinion as to the title of one of the jobs identified, in context, the surrounding paragraphs make clear that the ALJ intended to identify the position of office cleaner rather than office clerk. Not only did the ALJ include the same DOT code that the VE provided at the hearing for the position of office cleaner, but the ALJ also included the same number of nationwide jobs that the VE stated at the hearing. Therefore, the Court finds that the ALJ's use of the job title office clerk, rather than office cleaner, is a scrivener's error.

SSR 00-4p is inapplicable. SSR 00-4p provides that:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will: ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and if the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704, at *4 (SSA Dec. 4, 2000). "When vocational evidence provided by [an expert] is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the . . . evidence to support a determination or decision that the individual is or is not disabled." *Id.* If the conflict

is resolved in favor of the VE, the ALJ must articulate a "plausible reason" for accepting testimony that conflicts with the DOT so that the hearing decision is susceptible to meaningful judicial review. *Augustine v. Barnhart*, No. 1-00-CV-749, 2002 WL 31098512, at *10 (E.D. Tex. Aug. 27, 2002); *see also* SSR 00-4p (providing examples of reasonable explanations for disregarding DOT). However, the testimony of the VE did not conflict with the DOT. The ALJ reasonably relied on the VE's testimony because the record reflects an adequate basis for the assertion that Plaintiff could perform the jobs the VE identified. *See Carey*, 230 F.3d at 146. Therefore, the ALJ was not required to explain in her decision how she resolved the conflict because there is no such conflict.[7]

### 2. *The jobs the VE provided did not conflict with the ALJ's RFC determination.*

In her RFC determination, the ALJ found that Plaintiff can "understand, remember, and carryout simple, routine and repetitive tasks involving only simple work-related decisions with few, if any, work place changes." R. 22. Plaintiff argues that the jobs the VE provided at the hearing conflict with this determination. ECF

---

[7] Plaintiff cites *Bridges v. Astrue* as support for her argument that the ALJ committed legal error by accepting the VE's conflicting testimony without any further inquiry. ECF No 12 at 6 (citing *Bridges v. Astrue*, No. 07-490-FJP-DLD, 2008 WL 4510037, at *6 (M.D. La. Sept. 30, 2008)). In *Bridges*, the court found that the jobs the VE identified were in fact categories of jobs, creating ambiguity with respect to the identity, number, and listed skill level of the positions, and that the VE failed to describe the specific skills and exertional levels required for the positions, other than to say that they were unskilled, sedentary jobs. 2008 WL 4510037, at *5. Unlike in *Bridges*, Plaintiff has not pointed to any conflict between VE's testimony and the DOT. Rather, the conflict exists between the VE's testimony and step five of the ALJ's decision that included the wrong title of the job the VE identified. Given this difference, *Bridges* is inapplicable.

No. 12 at 6. Plaintiff asserts that since the RFC limited her to jobs that require only simple tasks, she cannot perform the step five jobs, which, according to Plaintiff, require a reasoning level of three. *Id.*

However, this court previously rejected this same argument, as have at least two other district courts in this circuit. *Burnham v. Saul*, No. H-19-1564, 2020 WL 3259619, at *6–7 (S.D. Tex. Apr. 14, 2020); *accord Graves v. Saul*, No. 7:18-cv-00177-O-BP, 2020 WL 896669, at *4 (N.D. Tex. Feb. 25, 2020); *Edwards v. Comm'r*, No. 4:18-CV-372, 2019 WL 4564833, at *2–3 (E.D. Tex. Sept. 20, 2019). In *Burnham*, the court, citing the holdings in *Graves* and *Edwards*, rejected plaintiff's argument that the level three reasoning level was inconsistent with the ALJ's RFC and plaintiff's ability to understand, remember and carry out "simple tasks" and make "simple work related decisions." 2020 WL 3259619, at *6–7.

Moreover, the office cleaner job has a reasoning level of one, not three.[8] DOT 323.687-014, 1991 WL 672783. Plaintiff does not dispute that a reasoning level of one is consistent with a claimant's ability to understand simple instructions and perform simple tasks. *See* ECF No. 12 at 7. Reasoning level one requires a claimant to "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or

---

[8] The jobs of mail clerk and shipping/receiving weigher each have a reasoning level of three. DOT 209.687-026, 1991 WL 671813; DOT 222.387-074, 1991 WL 672108.

from these situations encountered on the job." *Dictionary of Occupational Titles*, Vol. II, App. C § III. Because the ALJ need only find one job that exists in significant numbers in the national economy that Plaintiff could perform, the office cleaner job alone would satisfy that requirement. *See Lucia A. v. Saul*, No. 4:19-CV-04685, 2021 WL 707672, at *8 (S.D. Tex. Jan. 26, 2021) (finding that substantial evidence supports the ALJ's step five determination where one of the jobs identified by the VE satisfied Plaintiff's limitations and existed at significant numbers in the economy); *Gaspard v. Soc. Sec. Admin., Comm'r,* 609 F. Supp. 2d 607, 617 (E.D. Tex. 2009) ("The Commissioner's burden at Step 5 of the sequential evaluation process . . . is satisfied by showing the existence of only *one* job with a significant number of available positions that the claimant can perform." (citing *Evans v. Chater*, 55 F.3d 530, 532–33 (10th Cir. 1995))). Therefore, substantial evidence supports the ALJ's step five determination.

### B. The ALJ Properly Considered and Weighed the Medical Evidence.

Plaintiff argues that the ALJ misstated and "cherry-picked" the evidence by omitting or ignoring several pieces of evidence regarding Plaintiff's symptoms and appointments. ECF No. 12 at 7–10. Plaintiff contends that the ALJ used only the evidence that supported her decision. *Id.* at 10. Defendant counters that the ALJ properly considered the evidence, and substantial evidence supports her RFC determination. ECF No. 14 at 7–9.

The RFC determination is the sole responsibility of the ALJ. *Taylor v. Astrue*, 706 F.3d 600, 602–603 (5th Cir. 2012) (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)). As administrative factfinder, the ALJ is entitled to significant deference in deciding the appropriate weight to accord the various pieces of evidence in the record. *See Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). However, the "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza*, 219 F.3d at 393 (citing *Switzer v. Heckler*, 742 F.2d 382, 385–86 (7th Cir. 1984)). The ALJ must address and make specific findings regarding the supporting and conflicting evidence, the weight to give that evidence, and reasons for his or her conclusions regarding the evidence. *Armstrong v. Sullivan*, 814 F. Supp. 1364, 1373 (W.D. Tex. 1993).

Plaintiff provides several instances where the ALJ did not cite a particular part of the record. Among other things, Plaintiff asserts that the ALJ failed to consider Plaintiff's history of falling, instances of Plaintiff exhibiting emotional distress, the context of several medical examinations, several medical examinations Plaintiff underwent, additional medical diagnoses and observations of Plaintiff's condition, and an MRI of Plaintiff's thoracic spine in March 2017. ECF No. 12 at 7–10. Plaintiff argues that these instances are examples of the ALJ "cherry-picking" the record. However, there is no need for the ALJ to discuss each and every piece of evidence in the record, nor does the ALJ's failure to discuss the evidence actually

establish a failure to consider the evidence. *See Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005) (citing *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994)); *Bordelon v. Shalala*, No. 94-30377, 1994 WL 684574, at *1 (5th Cir. Nov. 15, 1994). There is no evidence that the ALJ failed to consider these records just because she failed to discuss them in her opinion or that she was "picking and choosing" only evidence that supported her position.

Contrary to this assertion, the ALJ acknowledged and considered some of the evidence that Plaintiff contends she ignored. For instance, Plaintiff states that the ALJ ignored a 2017 MRI of her thoracic spine, but the ALJ acknowledged this examination and noted the mild findings. R. 29. Plaintiff also suggests that the ALJ ignored her complaints of severe pain during a February 2017 doctor's visit, but the ALJ found Plaintiff's chronic pain to be a severe impairment. R. 20.

Moreover, Plaintiff omits relevant information in the examples she cites as support for her argument. For example, Plaintiff argues that the ALJ failed to acknowledge that an emergency room visit in February 2017 occurred due to a fall, but Plaintiff omitted that she drove herself to the emergency department, was unreceptive of guidance against driving, continued to ambulate after the fall, and her pain was mild. *See* R. 709–10. Plaintiff also argues that, when discussing February 2017 doctor's visit, the ALJ failed to note that she was sobbing and weeping.

Plaintiff fails to acknowledge, however, that she was composed during the visit. R. 696.

In conducting her RFC determination, the ALJ considered both conflicting and supporting evidence. The ALJ acknowledged that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but disagreed with Plaintiff concerning the intensity, persistence and limiting effects of these symptoms. R. 23. Although the ALJ may not have discussed every piece of evidence in her decision, the ALJ provided a general chronological outline of the progress of Plaintiff's symptoms and impairments. The ALJ's analysis reflects that Plaintiff suffers from a history of chronic pain, muscular instability, anxiety, and depression, but that these symptoms were not always present, were managed through medication, and were often unsubstantiated by medical tests. R. 22–30. Additionally, Plaintiff's chronic pain syndrome and mental limitations[9]

---

[9] Plaintiff did not raise the issue, but the Court notes that the ALJ gave little to no weight to the only medical opinions on Plaintiff's mental limitations, including the opinions of two State Agency physicians, and Dr. Gamez, a psychologist who provided therapy to Plaintiff from May 2018 through December 2018. R. 30. There were no other opinions regarding Plaintiff's mental limitations. "[W]hen the ALJ rejects the only medical opinions of record, interprets the raw medical data, and imposes a different RFC, the ALJ has committed reversible error." *Garcia v. Berryhill*, No. 17-CV-263, 2018 WL 1513688, at *2 (W.D. Tex. Mar. 27, 2018) (collecting cases); *accord Allen v. Saul*, No. 4:19-cv-1575, 2020 WL 5412630, at *7 (S.D. Tex. Sept. 9, 2020); *Beachum v. Berryhill*, No. 17-CV-95, 2018 WL 4560214, at *4 (W.D. Tex. Sept. 21, 2018). By rejecting the only medical opinions on Plaintiff's mental limitations, the ALJ improperly interpreted the raw medical data contained in the records to formulate an RFC. This is particularly egregious for mental health limitations, which are difficult to determine. *Singletary v. Brown*, 798 F.2d 818, 820 (5th Cir. 1986) ("Determining whether a claimant is disabled because of a mental condition under the . . . sequential process can be a difficult task."). Reversal of an ALJ's decision is appropriate, however, only if a plaintiff shows prejudice from the error. *Newton v. Apfel*, 209

have waxed and waned but have shown improvements in recent years.[10] As the trier

of fact, the ALJ is entitled to weigh the evidence against other objective findings.

*See Walker v. Barnhart*, 158 F. App'x 535, 536 (5th Cir. 2005). Since the ALJ

considered both conflicting and supporting evidence when formulating her RFC

determination, substantial evidence supports the ALJ's decision.

## C.    The ALJ Properly Considered Dr. Vahid Eslami's Opinion.

Plaintiff argues that the ALJ violated 20 C.F.R. § 404.1527(c) because he

failed to consider the opinions of Dr. Vahid Eslami and other treating physicians

---

F.3d 448, 458 (5th Cir. 2000); *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996) ("We will not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges."). Plaintiff did not show prejudice because she did not raise the issue and waived any error. *See, e.g.*, *Arteaga v. Berryhill*, No. 4:18-CV-3475, 2020 WL 1154570, at *2 n.5 (S.D. Tex. Mar. 10, 2020) (finding that Plaintiff waived issue with regards to Step Three listings by failing to brief the argument). Moreover, Plaintiff cited to the ALJ's treatment of these three opinions in her next point of error as the only opinions the ALJ showed the weight given. ECF No. 12 at 12. Nonetheless, despite saying she gave no weight to the opinion, the limitations the ALJ incorporated in the RFC are consistent with Dr. Gamez's diagnosis and noted limitations. For example, Dr. Gamez diagnosed Plaintiff with major depressive disorder and anxiety, R. 1578, which the ALJ found to be severe impairments, R. 20. In addition, Dr. Gamez noted Plaintiff had difficulty accomplishing tasks. R. 1578. The RFC limits her to self-pace so that the work need only be done at the end of the day. R. 22. Dr. Gamez also opined Plaintiff suffered from impaired social functions and distances herself from people to avoid conflict. R. 1578. The RFC limits her to only occasional interaction with the public, no assembly line work, and no teamwork. R. 22. Thus, there is no prejudice to Plaintiff.

[10] R. 1395 (2/28/18) (Plaintiff able to carry out her daily activity); R. 1414 (3/28/18) (Plaintiff still cared for her children and husband); R. 1416 (3/28/18) (Plaintiff denied anxiety); R. 1519 (9/28/18) (Plaintiff denied suffering from anxiety); R. 1520 (9/28/18) (Plaintiff's pain stable on medication); R. 1521 (9/28/18) (Plaintiff denied suffering from anxiety and depression); R. 1531 (10/29/18) (Plaintiff stated leg tremors have improved and denied suffering from anxiety and depression); R. 1531 (10/29/18) (Plaintiff functioning well at home taking care of her children and husband); R. 1534 (10/29/18) (Plaintiff appeared cheerful, pleasant, alert, and oriented); R. 1534 (10/29/18) (no visible tremors); R. 1537 (10/29/18) (tremors improving); R. 1553 (11/15/18) (muscle spasms not present during examination); R. 1569 (11/28/18) (sporadic symptoms of paresthesia, tremors, loss of balance); R. 1571 (11/28/18) (Plaintiff alert and oriented).

regarding a diagnosis of stiff person syndrome and failed to explain the weight given to the opinions of all the treating physicians. ECF No. 12 at 10–14. Defendant counters that the ALJ properly considered the various medical opinions, and that even assuming Plaintiff were diagnosed with stiff person syndrome, the diagnosis alone does not establish disability. ECF No. 14 at 9–10.

An ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 61 Fed. Reg. 34490-01 (July 2, 1996); *see also Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). A treating physician's opinion on the nature and severity of a claimant's impairment should be afforded "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).[11] "[W]hen good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony" when such opinions "are brief and conclusory, not supported by medically acceptable

---

[11] In cases filed on or after March 27, 2017, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," including those from a treating physician. 20 C.F.R. § 404.1520c(a). Since Plaintiff filed her claim on February 13, 2017, 20 C.F.R. § 404.1527(c)(2) applies.

clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Myers*, 238 F.3d at 621 (quoting *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994)); *see, e.g., Loza*, 219 F.3d at 395 (concluding that "[n]o good cause appears in the ALJ opinion or in the record to justify the ALJ's failure to give 'considerable weight' to the treating doctors' medical evidence").

Although Plaintiff states that the ALJ ignored other treating physicians, Plaintiff only cites as evidence the medical evaluations of Dr. Vahid Eslami.[12] Dr. Eslami qualifies as a treating physician for the purposes of assigning "controlling weight." The Social Security Regulations require that a "treating source" have "an ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502. Plaintiff must have seen Dr. Eslami "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [her] medical condition(s)." *Id.* Although Plaintiff visited Dr. Eslami on only two occasions, during those visits, Dr. Eslami conducted several tests on Plaintiff. R. 1275, 1402. While Dr. Eslami ultimately could not make an absolute diagnosis, Dr. Eslami, in consultation with Dr. Elena Shanina, formulated a plan of care for Plaintiff. R. 1408–

---

[12] The Plaintiff did not name any other treating physicians or cite to any opinions she claims were not adequately considered. Since the Plaintiff failed to adequately brief this issue with respect to any other treaters, she has waived any error. *Boggs v. Krum Indep. Sch. Dist.*, 376 F. Supp. 3d 714, 722 (E.D. Tex. 2019) ("A party waives an issue if he fails to adequately brief it.") (quotations omitted). It is not the court's responsibility to scour the record looking for evidence to support a party's arguments. *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (citing *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.")).

09. Unlike the claimant in *Ybarra v. Colvin*, Plaintiff did not visit Dr. Eslami for the sole purpose of obtaining a report to support her disability claim. *Cf.* No. 4:13-CV-3720, 2015 WL 222330 at *11 (S.D. Tex. Jan. 14, 2015) (declining to find an "ongoing treatment relationship" where the sole purpose of the second examination was to conduct a limitations assessment for the purposes of claimant's disability claim).

Since Dr. Eslami qualified as a treating physician, the ALJ was required to give his opinion "controlling weight" if it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Newton*, 209 F.3d at 455 (quoting *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)). Plaintiff misstates the record, however, when she argues that the ALJ did not consider his opinion. Dr. Eslami stated in his evaluation that, after reviewing the results of Plaintiff's anti-GAD test, there is no absolute diagnosis for Plaintiff. R. 1408. The ALJ cites Dr. Eslami's inability to absolutely diagnose Plaintiff as support for her determination that "claimant's alleged stiff person syndrome [was] a non-medically determinable impairment. . .. The evidence of record shows that this condition was ruled out." R. 20. While the ALJ's choice of language in describing Dr. Eslami's conclusion may be an overstatement, the ALJ did not discount or ignore his opinion. Nor did Dr. Eslami provide any limitations on Plaintiff's ability to work that the ALJ was required to

consider elsewhere. Since the ALJ considered Dr. Eslami's conclusion, the ALJ was not required to go through the factors listed in 20 C.F.R. § 404.1527(d)(2). *See Newton*, 209 F.3d at 456 (explaining that an ALJ must consider the 404 factors to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to "controlling weight").

The ALJ did not err in her evaluation of the treating physicians' opinions. Although the ALJ does not cite Dr. Eslami by name, the ALJ considered his opinion in connection with Plaintiff's alleged stiff person syndrome. As Dr. Eslami was a treating physician, the ALJ gave great weight to his inability to provide an absolute diagnose for Plaintiff's impairments despite a positive anti-GAD test.

## V. CONCLUSION

The Court **GRANTS** Commissioner's motion for summary judgment, ECF No. 13, and **DENIES** Plaintiff's motion for summary judgment, ECF No. 12. The Commissioner's determination that Plaintiff is not disabled is **AFFIRMED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

Signed at Houston, Texas, on September 17, 2021.

_Dena Palermo_

**Dena Hanovice Palermo**
**United States Magistrate Judge**

22